DUMOND'S CASE.

Aroostook.   Opinion June 17, 1926.

*Under the Workmen's Compensation Act, a contribution by a son to a father to save an investment in a business venture whether applied on account of principal or interest of a mortgage loan may not be regarded as contribution for support.*

*While contributions to sustain a failing business venture are not contributions for support within the meaning of the Compensation Act; a failure in business may produce conditions that will result in partial or even entire dependency on one's children for support.*

*Dependency entitling a claimant to compensation does not require that the claimant be actually and solely dependent upon the earnings of the injured person for the bare necessities of life.   The Act must be construed liberally in this respect, and dependency held to exist, whenever it appears that the contributions were relied upon by the claimant for his or her reasonable means of support suitable to his or her station in life.*

In the instant case only so far as the claimant is able to show that he was relying upon the financial assistance of his son at the time of the injury for the support of himself and those dependent upon him, as reasonably necessary, and in a manner suited to their station in life, can an employer be compelled to contribute for the loss.

On appeal. Claimant is an alleged dependent father of Victorie Dumond who was fatally injured while in the employ of Boone & Brewer Construction Company on August 18, 1924. The only question involved was the dependency of the father. A hearing was had and compensation for partial dependency was awarded, and from an affirming decree an appeal was taken by respondents. Appeal sustained. Decree to be modified in accordance with the opinion.

The case is fully stated in the opinion.

*C. F. Small*, for claimant.

*Robert Payson*, for respondents.

SITTING: WILSON, C. J., PHILBROOK, DUNN, MORRILL, BASSETT, JJ.

WILSON, C. J. An appeal from a decree based upon the findings of the Deputy Chairman of the Industrial Accident Commission.

The employee was fatally injured in an accident arising out of and in the course of his employment. The claimant is the father of the deceased employee and the question involved is whether the father was a dependent within the meaning of the Compensation Act, and, if so, to what extent.

Over four years prior to the accident the claimant was the owner of two farms and apparently in comfortable circumstances. At the insistence of the deceased, he sold his two small farms and purchased a larger farm upon the understanding that the deceased would remain at home, when needed, to aid in carrying on the farm, and contribute, so far as he was able, from his earnings outside, toward the payment of the purchase money mortgages; and at the death of the father the farm should become his. The agreement or understanding to this effect, however, was oral and never reduced to writing. The deceased worked at home a part of each year and contributed a part, at least, of his earnings when at work away toward the carrying out of this arrangement.

The purchase price of the farm was eighteen thousand dollars of which six thousand was paid in cash obtained from the sale of the two small farms and the balance of twelve thousand was obtained on two mortgages, one for eight thousand and a second for four thousand dollars.

The new venture, however, proved disastrous financially during the years preceding the accident, as was the case with many other

farmers during that period in Aroostook County; and at the time of the accident in August, 1924, the farm was hardly worth the amount of the mortgage indebtedness. The father was also indebted to various other parties in considerable sums, and for a year or more previous to the death of the son was, undoubtedly, insolvent, if forced to liquidate.

Since the purchase of the farm he had paid the interest on the first mortgage and reduced the principal to seven thousand four hundred and thirty-seven dollars and twenty-three cents. Two hundred and twenty-eight dollars and twenty-nine cents was paid on the principal during the year prior to the accident and from the earnings of the deceased. Nothing had been paid on the second mortgage, not even the interest. The above facts were all found by the Deputy Commissioner who presided at the hearing.

The Deputy Commissioner also found that the claimant was dependent upon the deceased to the full extent of his contributions in cash of three hundred and thirty-nine dollars and the value of his labor on the farm upon the ground that the payment of interest on a mortgage may be held to be in the nature of support within the meaning of the act; and held that, inasmuch as the unpaid interest on the second mortgage more than offset the sum paid on the principal of the first mortgage, no reduction should be made by reason of the application of any part of his cash contribution to the payment of the principal of the mortgage indebtedness.

The insurance carrier who prosecutes the appeal contends that inasmuch as the farm was purchased as an investment and in the nature of a business venture, contributions by the deceased in accordance with such an arrangement as was shown to exist in this case, cannot be held to be contributions for support within the meaning of the Act; that financial distress brought on by a bad investment, while it may produce need of financial assistance, does not, necessarily, result in dependency under the Compensation Act.

It may well be that contributions to sustain a failing business venture are not contributions for support, but a failure in one's business may produce a condition that will result in a partial, or even an entire dependence upon others for support. Such a situation, we think the Deputy Commissioner was warranted in finding in the instant case.

The business venture on which the father at the suggestion of the son embarked in 1919 had, through a succession of bad crops, resulted in the father being compelled to depend on the aid of his children, not only to save his investment, but for the support of his family. In so far as the contributions were to save the investment in the farm, we think they cannot be regarded as contributions for support, whether applied to the payment of principal or interest. The payment of interest in such a case is not like the payment of interest on a mortgage of a house in which the dependent lives, which may be treated as rent, as has been held in some instances. *Milwaukee Basket Co.* v. *Ind. Com.,* 173 Wis., 391.

We do not think it was intended under the Compensation Act to compel contributions by an employer to one to whom an injured employee had been furnishing financial assistance to further some business enterprise merely because the person so assisted was dependent on such assistance to save himself from financial loss. Only in so far as the claimant is able to show that he was relying on such assistance at the time of the injury as reasonably necessary for the support of himself and those dependent upon him in a manner suited to their station in life can the employer and the industry be compelled to contribute.

We think the Deputy Commissioner erred in treating as contributions for support payments by the deceased to his father that were applied on the investment in the farm, whether on the principal or in payment of interest, and the testimony of the father was that all the deceased's cash contributions for the preceding year were so applied.

Dependency within the meaning of the Act does not require that one be actually and solely dependent upon the earnings of some one for the bare necessities of life. *MacDonald's Case,* 120 Maine, 52, 57; *Rhyner* v. *Hueber Bldg. Co.,* 156 N. Y. S., 903; nor under the Compensation Act of this state does dependency follow from mere contributions by the injured workman as it apparently does under the Illinois statute. *Humphrey* v. *Indus. Com.,* 285 Ill., 372; *Rockford Cabinet Co.* v. *Indus. Com.,* 295 Ill., 332. The Act, however, should be construed liberally, and dependency is held to exist whenever it appears that the contributions were relied upon by the claimant for his or her reasonable means of support, and suitable to his or her station in life. In re Stewart, 72 Ind., App., 463; *Powers* v. *Hotel Bond Co.,* 89 Conn., 143; *Blanton* v. *Wheeler & Howes Co.,* 91 Conn., 226.

As the court said in re Carrol, 65 Ind. App., 146, "To confine the inquiry to the question whether the family of the deceased workman could have supported life without any contributions from him, or whether such contributions were absolutely necessary, in order that the family might be reasonably maintained is not a fair test of dependency; but rather the inquiry should include the question whether the contributions from the workman were looked to, depended and relied on in whole, or in part, by the family for means of reasonable support." See also *In re Peters*, 65 Ind., App., 174. *McMahon's Case*, 229 Mass., 48.

The test, therefore, is not whether the family could support life without the contributions of the deceased, but whether they in fact reasonably depended upon him in some degree for their means of living according to their position in life. Bradbury's Workman's Compensation Law, 2d Ed., Page 571-573; *Howells* v. *Vivian & Sons*, 85 L. T., 529, 4 W. C. C., 106.

The evidence is unsatisfactory as a basis for determining to just what extent the father relied upon the deceased for the support of himself and those dependent upon him; but under the above test, we are not disposed to disturb the Deputy Commissioner's finding that there was a partial dependency, but only to the extent of the value of the deceased's labor on the farm. A remanding of the case for further evidence might produce more tangible evidence upon which to base a conclusion as to the actual extent of this dependency; but from evidence of the claimant and having in mind the manner of living of the ordinary farmer and the evident difficulty on the part of the claimant in understanding the questions and making himself clear, we think it very doubtful whether any more satisfactory result would be arrived at by a further hearing.

We do not, however, arrive at the same result as the Deputy Commissioner as to the total earning of the deceased or the value of his contributions to the father in the form of labor on the farm. However, we adopt his findings as to wages where the evidence does not appear to us conclusive.

From the evidence it appears that the deceased, in the year previous to his death, worked on the road at the employment in which he was engaged at the time of the accident from June 1st to August 18th, or a period of eleven weeks and one day, and at three dollars and eighty-five cents per day, or $23.10 per week, and earned at that rate $257.85.

From April 1st to June 1st, or a period of eight weeks and four days, he worked on the farm, at home at the rate of twenty-two dollars per week, including room and board at seven dollars per week. From November 1st of the previous year to April 1st, he worked in the woods, at a per diem not clear from the evidence; but for a total wage, found by the Deputy Commissioner to be $628.00. From August 18th of the previous year to November 1st, the evidence is that he was at work on the farm. We, therefore, find the total value of his services on the farm for the year preceding his death at the price fixed by the claimant to be $425.34, or a total yearly earning of $1311.19.

We cannot accept the contention of the insurance carrier that the evidence shows an agreement by counsel that his average daily wage at the various occupations was $3.85, plus one dollar per day for board; and find that the above sum is the total amount of his earnings for the year prior to his death, of which he contributed to the support of the claimant nineteen weeks and two days' labor on the farm at $15 per week, or $2.50 per day,—his contribution to the father being merely the value of his labor—or a total of $290.00 or .221 per cent. of his total earnings. We do not think any deduction can be made for the expense and upkeep of an automobile owned by the claimant. The evidence does not show that any of the contributions of the deceased went for this purpose, as appeared in *MacDonald's Case*, 120 Maine, 52, or that the automobile was used otherwise than in connection with the claimant's business. It is agreed that two thirds of the deceased's average weekly wage is $14.81, .221 per cent. of which is $3.27, which is the weekly sum the insurance carrier should pay the claimant for the period fixed by the Act.

The mandate will be:

> *Appeal sustained.*
> *Decree to be modified in accord-*
> *ance with this opinion.*