Argued November 14, reversed November 27, submitted on petition for rehearing December 11, former opinion adhered to and rehearing denied December 29, 1929.

## B. F. PAUL ET AL. *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.

(272 Pac. 267; 273 Pac. 337.)

600

602

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Miles H. McKey,* Assistant Attorney General, with an oral argument by *Mr. McKey.*

For respondents there was a brief over the names of *Mr. C. F. Pruess* and *Mr. Allison Moulton,* with an oral argument by *Mr. Pruess.*

COSHOW, J █ There is conflict among the authorities about the law applicable to dependents. The conflict may be accounted for to some degree by the difference in the language of the different statutes. There is a difference between the English statute and the American statutes. The former uses as a standard for determining dependents the financial loss to the dependents. The American authorities generally measure dependency by the amount contributed by decedent and the amount required by the beneficiaries according to their station and condition in life. The result generally of the two methods is the same, but not always. All of the authorities agree that the question of whether or not claimants are dependent is one of fact. The authorities are unanimous in holding that dependency is determined as of the date of the fatal accident: Workmen's Compensation Act, C. J. 55 et seq.; 28 R. C. L. 771 et seq.; 1 Bradbury's Workmen's Compensation, 567 et seq., Art. B.; 1 Schneider's Workmen's Compensation Law, 941 et seq. See, also, extensive notes as follows: L. R. A. 1916A, 248; L. R. A. 1918F, 288; Ann. Cas. 1913E, 480.

█ The testimony is not disputed to the effect that decedent lived in the family of petitioners and contributed substantially all of his earnings to the family support. His mother testified that the amount so contributed by decedent the year preceding his fatal accident averaged $40 per month. The verdict of the jury was to that effect. The father was capable, was working and was earning at the time of the accident more than the son. The mother is strong enough to do her own work but did not work outside of the family so as to earn any money. The daughter is in school, is not strong and did not contribute any

604

money to the family income. Under the decisions of the courts of last resort having a statute similar to ours the mere fact that the father is earning a greater wage than the son and that the family could possibly exist without the son's earnings does not prevent the parents and minor daughter from recovering as dependents: *Conners* v. *Public Service Electric Co.*, 89 N. J. Law 99 (97 Atl. 792).

Dependents are not required to live on the barest necessities of life. The rule as stated by most of the authorities is that the surviving dependents are entitled to continue to live as they had been living prior to the accident. The basic idea of the statute is compensation. Surviving relatives within the class named in the statute to whose living decedent contributed and upon whom they relied partially or wholly for support are beneficiaries. The statute does not require destitution in order to be dependents. The statute should not be so construed as to encourage extravagance. In order for relatives to be dependents of an unmarried decedent they must be dependent in fact on his contributions in order to continue to live in comfort according to the manner of living of people in their class and condition of life: *McIntire* v. *Department of Labor & Industries,* 125 Wash. 370 (216 Pac. 7); *Gonzales* v. *Chino Copper Co.,* 29 N. M. 228 (222 Pac. 903); *Appeal of Hotel Bond Co.,* 89 Conn. 143 (93 Atl. 245, 249); 28 R. C. L. 779; *Geo. A. Lowe Co et al.* v. *Industrial Com. of Utah,* 56 Utah, 519 (190 Pac. 934); *Mahoney* v. *Gamble-Desmond Co.,* 90 Conn. 255 (96 Atl. 1025, L. R. A. 1916E, 110); *Utah Fuel Co.* v. *Industrial Com.,* 67 Utah, 25 (245 Pac. 381, 45 A. L. R. 882); *Daly Mining Co. et al.* v. *Industrial Com.,* 67 Utah, 483 (248 Pac. 125); *Ogden City* v. *Industrial Com.,*

57 Utah, 221 (193 Pac. 857); *Dumond's Case,* 125 Me. 313 (133 Atl. 736); 28 R. C. L. 770, 771.

■ There was material evidence tending to prove that the claimants were dependent upon the decedent in part for their living. The family was somewhat in debt and the showing is sufficient to submit the case to the jury that the father's income was not sufficient to take care of such indebtedness and support the family properly. There was evidence that claimants partially relied on decedent for their support.

■ It was the duty of the trial court to instruct the jury as to what constituted dependency under the Workmen's Compensation Law. The instructions of the court bearing upon that question are very meager and are as follows:

" * * If, on the other hand, you should determine that they were dependent upon him at the time of his death, February 1, 1927, then it will be your duty to determine what was the average monthly contribution to the plaintiffs for their support for the year next preceding his death. That is—how much did this deceased contribute to the support of these plaintiffs during that year immediately preceding his death, and in determining that question—whether or not plaintiffs were dependent upon Floyd Raymond Paul—it must be determined from the facts which existed at the time of the accident and injury, which resulted in his death February 1, 1927.

"In determining the question as to the average monthly payment, it must be confined to the payments necessary for the support of these plaintiffs and no other.

"You are not to take into consideration any contributions made for the support of the deceased himself or for any boarder or anybody else, but the contributions that were actually made, the average monthly contributions actually made to these plaintiffs."

There is no attempt on the part of the court to instruct the jury as to the law to be applied in determining whether or not claimants were dependents. This ought to have been done. The question is here for the first time. That is the only question involved in the litigation. The jury was left without a proper standard for determining whether or not the claimants were dependent as that term is used in the statute.

■ Defendant requested the following instructions:

"II. The plaintiffs were not dependent upon Floyd Raymond Paul unless on February 1, 1927, at the time of the accidental injury resulting in his death, any contributions made by him to them were needed to provide the family with the ordinary necessities of life suitable for persons in their class and position.

"III. If the amount of any contribution by Floyd Raymond Paul to the family did not exceed the amount required for his board and expenses, the parents have not established their dependency.

"IV. The mere fact that the parents received money or gifts from Floyd Raymond Paul, and expended it, is not alone sufficient to establish dependency.

"V. The giving of money by Floyd Raymond Paul to his parents in order that they might pay their debts, did not make them his dependents.

"VII. If you answer question No. 1 'Yes,' in answering question No. 2, you shall deduct from any contributions made by Floyd Raymond Paul to the plaintiffs, the reasonable value of his board and lodging so that your answer will be the average amount contributed monthly during the year next preceding his death, over and above the value of his board and lodging and other expenses paid from the family fund, for the time he lived with his parents."

These requested instructions or their substance should have been given.

The complaint alleges:

"That at the time of the untimely death and fatal accident of said Floyd Raymond Paul, and for the year prior thereto at least, because of lack of employment, low wages and high cost of living and circumstances and conditions over which plaintiffs had no control, they were compelled to and did look to, rely and depend upon contributions of the earnings of said Floyd Raymond Paul, deceased, for their support; that plaintiffs actually received support from said Floyd Raymond Paul, at the time of his death and for the year prior thereto at least; * * ."

There was evidence tending to support this allegation. The law controlling the application of the testimony to the determination of whether or not claimants were dependents should have been more fully explained to the jury. While this is a case of first impression here there are numerous cases where the question has been considered and determined in other jurisdictions: *Milwaukee Basket Co.* v. *Industrial Com.*, 173 Wis. 391 (181 N. W. 308); *Industrial Com.* v. *Likens*, 23 Ohio App. 167 (155 N. E. 414); *Carter* v. *Templeton Coal Co.*, 86 Ind. App. 175 (156 N. E. 518); *Dumond's Case*, 125 Me. 313 (133 Atl. 736); *Hancock* v. *Industrial Com.*, 58 Utah, 192 (198 Pac. 169, 170); *Kelley* v. *Hoefler Ice Cream Co.*, 196 App. Div. 800 (188 N. Y. Supp. 584); *In re McMahon*, 229 Mass. 49 (118 N. E. 189); *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 (228 Pac. 654); *Miller* v. *Riverside Storage & Cartage Co.*, 189 Mich. 360 (155 N. W. 462), and other authorities hereinabove cited.

■■ Requested instruction 5 should be so modified as to conform to the issues and proof, and so as

not to prevent recovery because the father or family were in debt. That condition may make it necessary for claimants to rely on the contributions for partial support. But contributions for the sole purpose of paying indebtedness will not operate to make debtors dependents within the statute. Debts like sickness may render it necessary for a family to depend upon a son or daughter for support although the head of the house may at the time of the fatal accident be earning a wage sufficient to support the family under ordinary circumstances. Money given as an investment or for speculation is not a contribution for support.

Decedent did not contribute anything to the support of claimants unless he put in the family fund more than his maintenance actually cost. If the decedent delivered to his mother an average of $40 per month and his board cost $30 a month, he contributed to the support of claimants only $10 per month. It is true there are some authorities which apparently hold to the contrary. We think the better and more reasonable authorities are in accord with our view.

We think the correct rule is aptly stated thus:

"It is true that the father himself worked and made $26.40 a week, and the mother and sister also worked. That does not alter the situation that the earnings of the deceased went to the general support of the family, and that the amount he contributed, as found by the court (and the finding was supported by evidence), was more than his board and lodging and other expenses amounted to. The father testified that deceased gave all his money, every week to his mother, and that it was more than the cost of his keep, so that it was a legitimate inference that the family was deriving substantial benefit from the fact that he remained living there and voluntarily gave

all his wages into the common fund." *Conners* v. *Public Service Electric Co.*, 89 N. J. Law, 99, 104 (97 Atl. 792, 794, par. (10).

See, also, *Dumond's Case*, 125 Me. 313 (133 Atl. 736); 28 R. C. L. 772, 773, par. 67; Workmen's Compensation Acts, C. J. 61, § (52)D.

■ We are not satisfied to undertake to fix from the evidence the amount that decedent contributed over and above his actual living expenses. The cost of the upkeep of the claimants according to their class and station in society is one which can be better determined by a jury than by this court on the evidence before it. The trial court properly denied the motion for a directed verdict. That court erred in not giving the substance of the instructions requested by the defendant and hereinabove set out. The other instructions requested by defendant were properly refused. For error committed in refusing to give the instructions requested and hereinabove quoted, the judgment is reversed and the action remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

RAND, C. J., and McBRIDE and ROSSMAN, JJ., concur.

Rehearing Denied December 29, 1928.

ON PETITION FOR REHEARING.

(273 Pac. 337.)

For appellant, *Mr. I. H. Van Winkle*, Attorney General, and *Mr. Miles H. McKey*, Assistant Attorney General.

For respondents, *Mr. C. F. Pruess* and *Mr. Allison Moulton*.

COSHOW, J Plaintiffs have presented a very sincere petition for rehearing. First, they claim that the case should be treated as one of equity cognizance; that the jury's verdict was advisable only and that the instructions should be limited to matter controlling the answer to the questions submitted to the jury. The statute provides that the case shall be tried on an appeal in the Circuit Court as other cases are tried there. Either party has a right to demand a jury and "that in case of any trial of fact by a jury the court shall be bound by the decision of the jury as to the question of fact submitted to it." Or. L., § 6637. It is our opinion that the rules of trial at law must prevail in appeals from the Accident Commission to the Circuit Court. The action is in the nature of a special proceeding, and the verdict of the jury corresponds to a special verdict of the jury in other law actions. The court is bound by the findings of the jury to the same extent that it is in all law actions.

 Petitioner further urges that the instructions of the court in the instant case were ample. This contention is based upon the principle that the instructions in a special proceeding, such as the one at bar, should be limited to the law applicable to the issues submitted to the jury for their special verdict. We think that the requested instructions which we hold should have been given do that. The precise matter at issue was the dependency of plaintiffs upon the decedent. There were two questions involved in that one issue, namely: the fact of the dependency and the extent of dependency. There was evidence tending to support the position taken by defendant to the effect that plaintiffs were not dependent upon decedent. The instructions requested and not given,

set out in our former opinion, were confined to that issue.

Petitioner insists that defendant has waived the error of failing to give the instruction because it did not set it out in the abstract of record as an error relied upon. The present rules of the court do not require errors to be assigned in the abstract. Errors are now required to be assigned in the brief. See Revised Rules adopted February 21, 1928, Rule 10, 123 Or. 681.

The evidence in regard to board was admissible. The issues were so framed that the question of board was properly submitted to the jury for the purpose of determining the amount decedent contributed toward the support of plaintiffs. The amount required to support decedent could not be treated as supporting plaintiffs. Evidence that decedent may have rendered services to plaintiffs in payment of or part payment of his board and lodging was properly admissible. Such evidence was pertinent to determine the actual contributions by decedent to the support of the plaintiffs. It was not necessary for the pleadings to specifically mention every detail that enters into the question of maintenance and support of plaintiffs. The general allegations as framed by the complaint are sufficiently broad and precise to admit testimony of the incidentals which go to make the expenses of board and lodging and the amount contributed by decedent, both in money and in services.

There is no merit in the contention on the part of plaintiffs to the effect that the record as certified indicates the requested instructions were given. The record as it appears here distinctly sets out the instructions requested by defendant and not given.

The record also shows that due exception was taken to the refusal of the court to give the requested instruction.

■ There is no merit in the contention that the court overlooked the legitimate inferences drawn by the jurors from plaintiffs' testimony. The court, in a sense, has nothing to do with the verdicts of the jury, unless error of law has been made by the judge presiding at the trial. Errors of law material to a fair trial require a reversal. We would have saved the plaintiffs and defendant the expense of another trial if the evidence had been complete enough so that we could have done justice to both plaintiffs and defendant.

Rehearing is denied.